## PEOPLE v ALLEN BROWN

Docket No. 88817. Submitted December 17, 1986, at Lansing. Decided April 21, 1987.

Allen Brown was charged with assault with intent to commit murder and, after a jury trial in Oakland Circuit Court, David F. Breck, J., was convicted of felonious assault. The proofs at trial, when viewed in the light most favorable to the prosecution, established that defendant grabbed the victim by her hair, held a knife to the victim's throat and threatened to kill the victim. Defendant moved for a directed verdict on the assault with intent to murder charge, which was denied. During the jury's deliberations, the bailiff was sent to bring the jury back to the courtroom so that the jury members could be sent home for the weekend. When the bailiff knocked on the juryroom door, he was requested by the jury to inform the judge that deliberations were almost completed. Counsel were informed of the jury's message. No objection was made, and ten minutes later the jury returned a guilty verdict. Defendant appealed.

The Court of Appeals *held:*

1. No error resulted from the fact that the bailiff was used as the means by which the jury conveyed to the judge that the deliberations were almost complete.

2. The trial judge properly denied the motion for a directed verdict on the assault with intent to murder charge, since there was sufficient evidence from which the jury could find the necessary specific intent to murder. The fact that the defendant did not inflict a serious wound would not preclude the finding of the specific intent to murder.

Affirmed.

### REFERENCES

Am Jur 2d, Criminal Law §§ 129-136.

Am Jur 2d, Homicide §§ 282, 425 *et seq.*

Am Jur 2d, Trial §§ 944, 1002, 1003.

Communication between court official or attendants and jurors in criminal trial as ground for mistrial or reversal—post-Parker cases. 35 ALR4th 890.

What constitutes attempted murder. 54 ALR3d 612.

1. TRIAL — JURY — DELIBERATION OF JURY — BAILIFFS — COMMUNI-
   CATION WITH JURY.

   Retrial is not mandated by reason of communication between a
   bailiff and the jury during the jury's deliberation where such
   communication arose out of a legitimate exercise of the bailiff's
   duties and there is no showing that prejudice resulted from the
   contact.

2. CRIMINAL LAW — EVIDENCE — INTENT TO KILL.

   Evidence that a defendant held a knife to the victim's throat and
   made threats that he was going to kill the victim is more than
   sufficient evidence to permit a jury to consider whether the
   defendant had the intent to kill; the fact that the defendant did
   not inflict a serious wound on the victim does not preclude the
   finding of an intent to kill; a corpse is not necessary to estab-
   lish the requisite intent.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Margaret G. Horenstein,* Assistant Prosecuting Attorney, for plaintiff.

*John D. Lazar,* for defendant.

Before: M. J. KELLY, P.J., and SULLIVAN and D. R. CARNOVALE,* JJ.

PER CURIAM. Defendant appeals as of right from his jury conviction of felonious assault, MCL 750.82; MSA 28.277. He was sentenced to from thirty-two to forty-eight months imprisonment. We affirm his conviction.

Defendant raises two issues on appeal. First, he claims that reversal is mandated because of a communication between the bailiff and the jury. During trial, the following colloquy occurred:

> *The Court:* Mr. Stout, the Bailiff, went in to get the jury to bring them in here because I was going

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to send them home for the weekend and what was said to you, Mr. Stout?

*Mr. Stout:* They said they were almost finished.

*The Court:* So perhaps we should wait a few minutes.

*Mr. Bailey:* Given that, I prefer it's another half hour to do that than have them come back Monday morning.

*The Court:* We'll wait until no later than six o'clock.

Neither party raised any objection regarding the jury's communication to the bailiff. Approximately ten minutes later, the jury returned with its guilty verdict.

We do not believe that the incident constituted error. We note that apparently there was no conversational exchange between the jury and the bailiff but that instead the jury was merely using the bailiff to pass along its message to the trial judge. Moreover, we agree with this Court's holding in the recent case of *People v Kent,* 157 Mich App 780; 404 NW2d 668 (1987), that incidental contact between court personnel and a jury does not automatically mandate reversal. As the panel in that case stated, pp 791-192:

> Broad rules of law designed to address especially egregious situations on occasion become petrified without additional analysis over periods of time. It makes little sense to have a rule so absolute that the potential result is reversal of an otherwise errorless trial because of an insignificant contact with a juror which does not even raise the concern of those who were present during the proceedings. . . .
>
> Little enough confidence exists today in our institutions without further perpetuating its erosion by an automatic rule applied to court personnel who are under oath to obey the law where

nothing more is revealed than an incidental contact unrelated to the case itself. The judicial system must demonstrate some confidence in those who are entrusted with its well-being and, in fact, have little interest in the outcome of a matter, when there is no showing of prejudice (or, after scrutiny, even a hint of such).

In *Kent*, the defendant claimed that error occurred because the bailiff entered the jury room during deliberations to take meal orders. The facts in the present case are even less egregious than those in *Kent*, since the bailiff apparently only knocked on the door to the room in which the jury was deliberating and then, in response to the jury's request, informed the trial judge that the jury was almost finished deliberating. It is not apparent that the bailiff entered the room or that he interacted with the jury. He was merely a messenger. Reversal is not required.

Next, defendant claims that the trial judge erred in denying his motion for a directed verdict, since there was insufficient evidence that defendant specifically intended to kill the victim. In ruling on a motion for a directed verdict of acquittal, the trial judge must consider the evidence presented by the prosecution up to the time the motion is made, view it in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the elements were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268; 380 NW2d 11 (1985). Assault with intent to murder is a specific intent crime. *People v Taylor,* 422 Mich 554, 567-568; 375 NW2d 1 (1985). An actor's intent may be inferred from the circumstantial evidence or from the facts and circumstances established beyond a reasonable doubt. *People v Strong,* 143 Mich App 442, 451-452; 372 NW2d 335 (1985); *Taylor, supra.*

The record contains more than sufficient evidence to persuade a rational trier of fact that the element of specific intent had been proven beyond a reasonable doubt. The facts when viewed in a light most favorable to the prosecution show that defendant was an aggressor in an assault during which he grabbed the victim by the hair, jerked her up onto her bed, held a knife to her throat, and screamed he was going to kill her. When the victim struggled, defendant dragged her into the kitchen, held her to the floor, and again held a knife to her throat and threatened to kill her. Contrary to defendant's argument, we are not persuaded that defendant's lack of specific intent to kill is evidenced by the fact that he did not slash or stab the victim but rather only inflicted a "superficial wound" onto her neck and by the fact that the victim did not require medical attention. A corpse is not necessary to establish the requisite intent.

Affirmed.